THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

*Pro se*

Jesse Graves     Civil action No. _____

Yates, III    9102329791
Plaintiff     4308 Preacher Holmes Rd.
              Graham NC 27253
Vs.

STATE FARM        For damages related defamation of character, libel,
CASUALTY
AND FIRE,
**Michael L.**
**Tipsord, CEO**
**Corporate**
**Headquarters**

Jess and Melissa Yates suffered a State Farm insured fire loss from a building fire in Wallace NC, population 3500, on Main street in Wallace, Oct 31, 2010. The trial was in the last week of January 2017. It was one of 14 unsolved arsons within 2 miles of the Yates loss from 2009 to 2014. State Farm turned the court case issue early on into a previously uninsured fire loss the Yates incurred In March of 2008 on Carolina Beach Road, Wilmington NC. We bring this suit against state farm for 6 million dollars based on the following reasons. The claim they defamed the yates for was 2 million dollars, As a result of that loss the Yates have suffered another 2 million in real estate and personal loss damages, and the Yates wish for 2 million in personal emotional distress award for

1

having had their reputation smeared. The argument State Farm did not review emails with Zoe Zacchino is false and criminal. We ask that the DOJ be asked to investigate criminally for defamation and section 11 of the federal code. **Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under Title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both. The true criminals in this case are obvious.**

### *Issue 1. for Review*

State Farm violated rule 26 by not providing discovery to the Yates family regarding the second fire on Carolina Beach road in a timely manner, as required by law. The significant ways it affected the Yates Due process is as follows: SBI agent Ken Olliver disclosed a second Carolina Beach Road fire, 1 hour later to State Farm investigator Kent Dowdy. That is why neither of them testified as witnesses for the State Farm after being subpoenaed. Ken Olliver investigated both fires with search dog Daida, for accelerants, and the fire Marshall reports had both fires on the reports. State Farm had it, supplied it to Tom Cox, the original attorney for State Farm, and they relieved him of trial duty and then "Hid it from Jonathan Hall and Carter Elkins." State Farm then purposely failed to call Kent Dowdy and Ken Olliver even though they were on the witness list, for fear of exposure of the rule 26 violation. In a pretrial evidentiary agreement, a decision was made to allow all 14 of the Wallace fires in from 2009 through 2014, all unsolved arsons located immediately around the insured Yates fire in Wallace, and the Carolina Beach Road fire. If disclosure had been made to the Yates counsel as required by rule 26, they may not have conceded to that negotiation and the Carolina beach fire would potentially been excluded as it was proven to be two fires unrelated to embers from the Yates fire, 1/10 of a mile away and suspicious in nature endangering 3 people asleep. With no prior knowledge of the fire Marshall's determination and SBI investigator cooperation as State Farm had, rule 26 was violated. Further the violation of this discovery continued to haunt the Yates family throughout the trial.

1. The Carolina Beach road fire became a pivotal point in the Yates case due to a false narrative from State Farm. The counsel for State Farm suggested

2

the fire was 1.) to keep the IRS from seeing it because it was part of a valuation argument in the Yates 2012 tax case. Counsel had access to the IRS tax court decisions years before the trial and knew this to be false, and the testimony from Mrs. and Mr. Yates, as well as the accountant, may have been discounted, because there was no evidence at that time allowed into court that explained the suspicious second fire, across the street, Nor was there any suggestion by Judge Swank that she may or may not allow such evidence into the courtroom. Judge Swank had decided to carefully weigh considerations about this fire, labeled a trash can fire only by State Farm, while State Farm tried to impeach Mr. Yates as a serial arsonist who committed tax evasion by destroying IRS evidence with the Carolina Beach Road fire and email fraud, before the Wallace building was even discussed with Mr. Yates on the stand. There were 4 baseless criminal allegations made, that were known fabrications resulting in dismissal of the jury and admonishment of Mr. Yates by Judge Swank. By this time Mr. Yates had been accused of fraudulent email creation, tax evasion by arson, obstructing a tax official and a suggestion of a second arson in a different town. Mr. Yates had no way of knowing whether State Farm would continue to be able to keep Judge Swank from letting in evidence regarding that second carolina beach road fire. As the morning testimony escalated with the State Farm lawyer continuing to question Mr. Yates truthfulness, while plainly being in violation of rule 26 and advocating things he knew to be false such as the IRS valuation tax court claim, and Mr. Yates grew obstinate and mad, and lost any empathy the jury had for the Yates family fire loss in Wallace.

The rule 26 transgressions continued to escalate with the Carolina Beach road fire discovery suppression. By the end of the sixth day, the trial only lasted 6 full days and two quick witnesses on the 7th, the New Hanover fire Marshall was finally allowed to testify and his report was entered into evidence, but the cost was unreasonable. State farm had compiled 15,000 pages of evidence that they submitted in discovery and it was agreed it would be entered into evidence along with the New Hanover county fire report. The manual of 15,000 pages became a focus of jury deliberation, as well as the accountants assertions supported by the 15,000 pages and the Yates attorneys never saw it. They never looked at the exhibits and it was explained by State Farm, "it is in a CD we sent". In effect the Yates counsel had a failed earlier motion to enable a New Hanover County fire marshall report that should have been discoverable through State Farm under rule 26 and the price was 15,000 pages of evidence with who knows what is buried

3

in the same. The attorneys for the Yates family pleaded at the end of the trial they never got the 15,000 page exhibits, and then it became obvious they had likely never opened the CD to see if they were there.

The failure to adhere to rule 26 was deliberate and dishonest and the defamatory and false nature of State Farms treatment of Mr. Yates impacted the course of the trial from the beginning to the end, when final exhibits were entered.

RULE 26 OF THE FEDERAL RULES OF CIVIL PROCEDURE Rule 26. Duty to Disclose; General Provisions Governing Discovery . . . (b) Discovery Scope and Limits . . . (3) Trial Preparation: Materials. (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation. (C) Previous Statement. Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either: (i) a written statement that the person has signed or otherwise adopted or approved; or (ii) a contemporaneous stenographic, mechanical, electrical, or other recording — or a transcription of it — that recites substantially verbatim the person's oral statement.

### *Issue 2. Purposeful defamation to enrich a client*
Bob Kochran, CEO of an engineering firm assessing Katrina damage for State Farm, said that he was asked to alter reports that the company did not agree with. In order to keep the State Farm contract, Kochran agreed to tell his engineers to "re-evaluate each of our assignments". One of the engineers, Randy Down, responded in an email, "I have a serious concern about the ethics of this whole matter. I really question the ethics of someone who wants to fire us simply because

4

our conclusions don't match theirs." State Farm's attempt to unduly influence the engineers was exposed during litigation in Jackson, Mississippi.

State Farm, the major US insurer, went so far as to engage in fraud to deny many claims. After the 1994 Northridge earthquake in California, which caused an estimated $US 33.8 billion in damage, company officials forged signatures on waivers of earthquake coverage to avoid paying quake-related claims. A unanimous Supreme Court from Dec 6, 2006, upheld a jury verdict that State Farm Fire and Casualty Co. committed fraud against the federal government after 2005's Hurricane Katrina.

In order to establish fraud under law, a person must prove she or he "suffered injury" from having **"acted in reliance upon"** another person's knowingly false, material misrepresentation. Markman went on to emphasize that the only way for an insured to satisfy the "reliance" element of a fraud claim is to prove that her reliance on the insurer's alleged misrepresentation was "reasonable": **"Insureds must 'show that any reliance on the insurer's representations was reasonable." It was reasonable that State Farm would produce all emails from Oct 8, 2010 and October 12. 2010, when the topic of whether insured policy was safe or to be canceled was the concern.**

**"There can be no fraud when a person has the means to determine that a representation is not true."** However, The insurer's allegedly fraudulent "representation did involve information or facts that were exclusively or primarily in the control of the insurer such as knowledge of the second Carolina Beach Road fire one hour later."

It is true the insured had the means, i.e., consultation with a lawyer, to determine whether the insurer's allegedly fraudulent representation was true but only after the discovery period was over under federal rule 26, and the pretrial hearing was the last working day before the trial. The issue was discovered based on State Farms pre trial motions.

The insured does claim, and there is there evidence, from the court transcripts, outside of jury presence, that State Farm did everything they could to prevent discovery and evidence of the second fire Carolina Beach Road fire, occurring just one hour later and 500 feet away, from ever being entered into evidence. That hindered and prevented the Yates family from defending baseless claims that the IRS case involved the same Carolina Beach Road property as a valuation issue

5

with the IRS. There was no truthfulness in the insurer's allegedly fraudulent representation on any of these four criminal accusation issues and they knew it from examining the tax court transcripts. They had colluded with Ken Olliver, the SBI investigator on both fires and he was on their witness list and investigated both Carolina Beach fires one hour apart.

*Any intentional false communication, either written or spoken, that harms a person's reputation; decreases the respect, regard, or confidence in which a person is held; or induces disparaging, hostile, or disagreeable opinions or feelings against a person is defamation as well.*

Defamation may be a civil charge. In the decision of <u>State Farm v. Radcliffe</u>, the Indiana Court of Appeals upheld a $14.5 million defamation verdict. Just to understand a defamation case, the person alleging defamation has to prove "actual malice" by a higher civil standard. A defamatory statement is a statement that tends to harm a person's reputation by lowering the person in the community's estimation.


**Litigation Privilege Lineage**
The *Simms* court summarized a lengthy history of the litigation privilege and immunity. Absolute immunity for defamatory statements made during judicial proceedings is rooted in medieval England and is considered "as old as the law" itself. English courts recognized the need to bar persons accused of crimes from suing their accusers for defamation. Additionally, the *Simms* court noted that English courts reasoned that attorneys should not be burdened with the duty to examine the truth or falsity of pertinent information because "counsel has a special need to have his mind clear from all anxiety." Finally, English courts disregarded the relevance or irrelevance of the defamatory statements to the issue in dispute. Those ancient courts reasoned that remedies other than lawsuits were available to parties aggrieved by malicious statements or conduct during litigation. However, we do not allow pistol toting duels anymore to settle defamation. We should embrace more honor and less chronic RICO behaviors.

**Most Jurisdictions Offer Immunity for Relevant Statements**
The Connecticut Supreme Court confirmed that the rationale supporting the absolute privilege for pertinent defamatory statements by attorneys during judicial proceedings in most American jurisdictions mirrors that of the English courts. The court also noted that courts in many American jurisdictions have followed an

approach that has strengthened the litigation privilege. Having acknowledged this....

**Privilege Not Unlimited in Scope**
Absolute immunity does not, however, protect attorneys or their clients against claims alleging the pursuit of litigation for the unlawful, ulterior purpose of inflicting injury on the plaintiff and enriching themselves and their client, despite knowledge that their client's claim lacked merit, the courts have cautioned. Such conduct constitutes the use of legal process in an improper manner or primarily to accomplish a purpose for which it was not designed. Accusing Mr. Yates of email fraud was an example. Accusing the Yates of having a value Issue withe IRS for the Carolina Beach Road fire case was another. Failure to disclose the second Carolina Beach road fire knowledge in pre-trial discovery, while constantly moving the court to obstruct the fire report into evidence was malicious, when put into the context, early in the trial, that the Yates Family was having a value issue with an IRS obstruction motivation to burn it was false. The IRS case with the Yates family was very plain and the Yates won it, and the value issue was only on the sale side of taxable proceeds and not the acquisition of the Carolina Beach Road property. Absolute immunity also does not bar claims against attorneys for their clients for vexatious litigation or malicious prosecution. State Farm attempted to prosecute Mr. Yates using known falsehood narratives in a civil trial to avoid payment. When State farm counsel accused Mr. Yates of email fraud, that was to inflict injury on the plaintiff, despite knowledge that the company's email server actually held that email of October 12, 2010. First he accused fraudulent creation, even so far as to say the print spacing was different. "Who would believe he said, that you could go to your email account and just print something from Yahoo? After 7 years?" That is the attorney for state farm accused Mr. Yates of criminal federal evidence fraud in a federal civil court trial for the sole purpose of enriching his client, when the effect of the presented email was to prove a point that started with State Farm attorney Carter Elkins opening statement falsehood. State Farm sought to defame Mr. Yates, with falsehoods and violations of rule 26. There is no justice in that, no honor, no integrity, no fair play. If courts are reduced to who can pay the best lawyers to tell the best lie for 7 years waiting on trial, our justice system becomes a mockery and only money will dictate the outcome for the best liars big companies can hire.

**Privilege Applies**
Connecticut's high court ultimately concluded that the Appellate Court correctly determined that attorneys are shielded by the litigation privilege from claims of

7

fraud because fraudulent conduct by attorneys, while strongly discouraged (1) does not subvert the underlying purpose of a judicial proceeding, as does conduct constituting abuse of process and vexatious litigation, for which the privilege may not be invoked; (2) is similar in essential respects to defamatory statements, which are protected by the privilege; (3) may be adequately addressed by other available remedies; and (4) has been protected by the litigation privilege in federal courts, including the U.S. Supreme Court and the U.S. Court of Appeals for the Second Circuit for exactly the same reasons that defamatory statements are protected.

**Zealous Representation Has Limits**

The duty of zealous advocacy has its limits and, as officers of the court, attorneys have specific duties not to attempt to fabricate or withhold evidence. The attorneys for State Farm withheld evidence and attempted fabrication. They withheld knowledge of a second fire on Carolina Beach Road and another email of October 12, 2010. Dissent also distinguishes between fraud and defamation, stating that fraud is a far more serious offense. The dissenting opinion offered a novel solution to the problem, suggesting that the privilege, while strong, might be eliminated in cases where a court or disciplinary body has already sanctioned the lawyer for fraud or presented false evidence to the tribunal. The state farm attorneys produced an email from October 8, 2010 while purposely withholding a contradictory email under the assumption Mr. Yates would be unable to produce it, from just a few days later. There is no doubt State Farm has had all emails, and may have destroyed those they deemed not good for their case.

The Indiana Court of Appeals affirmed a $14.5 million dollar defamation verdict against State Farm in _State Farm Fire & Casualty Company v. Radcliff_.[1] State Farm was found guilty of defaming a roofing contractor following hailstorms in Indiana in 2006.

"The majority's concern about protecting lawyers from suit by opposing parties plainly has a great deal of appeal, allowing a litigant to sue the opposing party's lawyer for inflicting emotional distress in the course of litigation, or saying things that the litigant deemed false would appear to run counter to that lawyer's obligations to zealously advocate for his or her client," opines John C. Martin, Chicago, co chair of the ABA Section of Litigation's Ethics and Professionalism Committee. "Our adversary system would be hamstrung if lawyers had to worry about being sued merely because an opposing party's feeling were hurt or the party did not agree with the substance of a lawyer's arguments," Martin adds.

8

"That said, I am not sure the majority gives enough credit to the competing concerns. As the dissent points out, the duty of zealous advocacy has its limits. A rule affording litigants unfettered rights to enforce ethical duties against opposing counsel by bringing fraud or other claims against attorneys has problems given the obvious concern that disappointed litigants might bring such claims, as a matter of course, after a decision that went against them," explains Martin. **"I do not know that the majority offers any suggestion as to why a privilege must attach even after a tribunal has determined that a lawyer did, in fact, violate his or her duties of candor to a court."**

A federal court decided deletion of emails by a senior manager during litigation should result in multi-million dollar punitive sanctions under amended Federal Rule of Civil Procedure 37. This decision highlights the choices that companies must make when preserving electronically stored information (ESI) and the significant consequences when they choose poorly.

In *GN Netcom, Inc., v. Plantronics, Inc.*, the U.S. District Court for the District of Delaware imposed $3,000,000 in punitive sanctions after one of the defendant's senior managers deleted tens of thousands of emails. The plaintiff's motion sought the imposition of sanction notwithstanding the fact that the defendant had issued a litigation hold, updated that litigation hold, and held trainings for its employees to promote compliance with the litigation hold.

**Showing of Bad Faith Key**
In this antitrust action, the defendant allegedly stopped the plaintiff from working with distributors to bring its product to market. The defendant's head of sales, a key senior manager considering the claim, deleted the emails that were the focus of the plaintiff's motion.

The defendant argued it took reasonable steps to preserve the emails. Deleting emails went against its directives, according to the defendant. The court rejected these arguments and found the defendant acted in bad faith with intent to deprive the plaintiff of discovery.

Once the court found the defendant spoliated evidence in bad faith, the burden shifted to the defendant to show lack of prejudice. The court found the defendant could not carry that burden.

9

Illinois Supreme Court Justice Lloyd Karmeier should have to submit to a subpoena in a $7 billion racketeering suit against State Farm because he associated with the alleged racketeers, according to Chicago lawyer Robert Clifford. The Yates ask the court to require State Farm to maintain all emails as we appeal this case in two separate actions.

"The amount in controversy is staggering," Clifford wrote in a May 8 motion to compel Karmeier production of documents about his 2004 election to the state high court. "The information sought is essential to proving the parties' association."

Clifford, who is on the legal team representing the trio of plaintiffs who brought the 2012 suit in southern Illinois' federal court, seeks 64 kinds of records, including Karmeier tax returns from 2002 to 2007, and all his communications with 87 other persons and entities, one of which is *The Madison-St. Clair Record*. The plaintiffs -- Mark Hale, Carly Vickers Morse and Todd Shadle -- assert that State Farm's allegedly improper support of Karmeier in his election resulted in an Illinois Supreme Court decision that overturned a valid $1 billion judgment against the insurance company in *Avery v. State Farm*. **This is now a potentially 7.6 billion dollar RICO case approved to proceed by the federal courts.** Hale, Morse and Shadle were plaintiffs in *Avery*, which included about a class of about 4.7 million State Farm policyholders that accused the insurer of providing inferior parts for vehicle repairs. In their class action racketeering suit, the plaintiffs basically contend that State Farm conspired with others to get a candidate elected to the Supreme Court who would vote to overturn the billion dollar judgment once elected. **This is how this company operates.**

"The issues in this action, including the independence of the judicial system, could not be more important," Clifford wrote in his clients' recent filing. He wrote that the racketeering statute makes it unlawful for any person associated with any enterprise to participate, directly or indirectly, in affairs of the enterprise. The words, "associated in any enterprise," appear in italics.

On the same date the plaintiffs' filed their motion to compel, Karmeier attorneys, A. Courtney Cox and Anthony L. Martin, moved to quash the subpoena or adopt a protective order keeping the documents confidential. They also sought a protective order for a deposition of Karmeier that lawyers for three plaintiffs plan to conduct. They did not file a brief in support of the motion, but asked for permission to exceed a 20-page limit to do so. U.S. Magistrate Judge Stephen Williams granted him 15 extra pages on May 12, and set a May 15 deadline for him to submit the

10

brief. Williams also resolved another dispute in Karmeier's favor, ruling that State Farm's lawyers can join his attorneys in conferences with the plaintiffs' lawyers. He also said lawyers for the individual defendants-- Ed Murnane, president of the Illinois Civil Justice League, and William Shepherd, an attorney at State Farm -- can join too. Clifford raised the issue in his motion, proposing an alternative order that would require Karmeier's counsel to meet with the plaintiffs' lawyers privately.

"In light of the impasse of the parties, plaintiffs ask this court to either command Justice Karmeier to produce the requested documents, or at the very least, to confer with plaintiffs' counsel privately, without other defense counsel participating in the conference," Clifford wrote. Martin and Cox responded in their motion, quoting a procedural rule that such conferences should include other affected parties. Williams cited that rule, plus two others, in opening the conferences. "Should any party or interested party believe in good faith that the meet and confer requires the input of another interested party to the case, or interested individual subject to subpoena, then any of the conferring parties may include that additional party in the meet and confer prior to bringing the matter to the court's attention," Williams wrote.

"This will also foster more productive meet and confers that do not need to be interrupted by consultation with interested parties that have been excluded from the conversation." The list of documents that Clifford wants Karmeier to produce begins with those relating to his selection as a candidate. He then goes on to ask for documents from 2003 and 2004, between Karmeier and the Illinois Civil Justice League, Shepherd, Murnane, State Senators Dave Luechtefeld and Dwight Kay, the Illinois Republican Party, the U.S. Chamber of Commerce and its Institute for Legal Reform, the Illinois Coalition for Jobs, Growth and Prosperity, State Farm chief Ed Rust, and nine other persons. The plaintiffs' motion to compel also seeks: **In short, State Farm bought a judge and now faces a federal RICO suit.** Now a determination on how State Farm acts to win judicial cases becomes fair game, without fabricating crimes as they did to the Yates family.

### "High Degree of Fault" Prompts Court to Impose Substantial Sanctions

In deciding on the proper sanction, the court considered whether a discovery sanction would be enough to cure the prejudice that the plaintiff had suffered. Rule 37(e) provides for sanctions if a party prejudices another party by failing to preserve ESI. Rule 37(e)(1) enables a court to "order measures no greater than necessary to cure the prejudice[.]" If the party that failed to preserve the ESI "acted

with the intent to deprive another party of the information's use in the litigation[,]" Rule 37(e)(2) allows a court to impose additional sanctions.

"'Lesser sanctions' are inadequate to fully redress the prejudice" to the plaintiff, the court stated. To reach this conclusion, **the court considered the defendant's "high degree of fault" and its bad-faith intent to deprive the plaintiff of discovery**. The court imposed punitive sanctions along with fees and costs, ordered an instruction that a jury may draw an adverse inference about the deleted emails, and left open the possibility of evidentiary sanctions.

WILLIAM C. HAMMEL and ALAN J. BELLAMENTE, vs. State Farm, Systematic efforts to intimidate opposing claimants,witnesses, and attorneys", "Finally, the evidence in this case supports the conclusion that State Farm has a regular practice of working to wear down and outlast plaintiffs and opposing attorneys in lawsuits seeking to punish it for bad faith claim handling, by using a variety of tactics to intimidate claimants, witnesses and attorneys who oppose it.

Adjuster Ray Summers testified that a common tactic of State Farm was that of 'unjustly attacking the character, **reputation and credibility of a claimant and making notions to that effect in the claim file to create prejudice in the event the claim ever came before a jury.**'"State Farm focuses on making the litigation process as time consuming, 6 years to trial and (**1000 pages of depositions while the Yates family fought with what was thought to be a terminal cancer**) expensive and prolonged as possible by, for example, making meritless objections; claiming false privileges; and destroying documents (**emails**) or claiming that they don't exist or would be too expensive to retrieve.

Gary Fye also provided expert testimony on these 'mad dog' litigation tactics, concluding that State Farms's use of them is 'extremely profitable.' even in light of the cost involved in an individual case, because of their in terrorem value across a wide range of cases in intimidating claimants and attorneys into not filing law suits at all, or settling claims for small amounts of money (**300,000**) they offered rather than endure the financial drain of litigation in face of such abusive tactics."


Campbell vs. State Farm
At the trial, the Campbells introduced evidence that: "State Farm's decision to take the case to trial was a result of a national scheme to meet corporate fiscal goals by capping payouts on claims company wide. This scheme was referred to as State

12

Farm's 'Performance, Planning and Review,' or PP&R, policy." The jury ruled in the Campbells' favor, awarding $2.6 million in compensatory damages and $145 million in punitive damages.

"Second, <u>State Farm engaged in deliberate concealment and destruction of all documents related to this profit scheme</u>. ... State Farm's own witnesses testified that <u>documents were routinely destroyed so as to avoid their potential disclosure through discovery requests</u>. Thet did the same in yhe Yates case constaantly fighting to keep the fire Marshal's report out on the carolina beach road fire until the judge let the report in in the last few hours of the trial over their standing objections. That did not keep them from insinuating the Yates were serial arsonists all week long. Such destruction even occurred while this litigation was pending. ... Additionally, State Farm, as a matter of policy, keeps no corporate records related to lawsuits against it, thus shielding itself from having to disclose information related to the number and scope of bad faith actions in which it has been involved." **State Farms contention that the email from Zoe Zacchino to Jess Yates on October 12 was deliberately falsified, and not have been discovered under rule 26 as well. Given the contention State Farm made over and over again in the first two days that Mr. Yates thought his policy was to be cancelled. State Farm deliberately omitted it.** State Farm cherry picked the email they wanted and then ran with a false narrative assuming there would be no ability to prove any evidence to the contrary. When the email was discovered proving their opening statement t be no more than defamation, they accused Mr. Yates of forgery while he was on the stand.They never admitted the document was legitimate and put Mr. Yates in a position of having to argue his innocence when they knew all along they were implying a defamatory falsehood.

"Third, State Farm has systematically <u>harassed and intimidated opposing claimants, witnesses, and attorneys</u>. ... For example, State Farm published an instruction manual for its attorneys mandating them to 'ask personal questions' as part of the investigation and examination of claimant in order to deter litigation. ... **There was also evidence that State Farm actually instructs its attorneys and claim superintendents to employ <u>'mad dog defense tactics' – using the company's large resources to 'wear out' opposing attorneys</u> (15,000 pages of evidence on a CD) by prolonging litigation, making meritless objections, claiming false privileges (Privileged immunity to lie for the purpose of enriching their client), destroying documents (emails), and abusing the law (rule 26 carolina beach road fire) and motion process (object to fire marshall**

13

testimony to a fire they knew about while failing to call their own investigator Kent Dowdy and SBI agent Ken Olliver who colluded to keep the second carolina beach road fire out and their violation of rule 26)."

Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under Title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

Aside from Section 1519's 20-year maximum prison sentence (no small benefit to the government in big-dollar fraud loss cases such as Wolff), its primary appeal is that it uniquely removes certain key proof burdens from prosecutors' collective shoulders. Prosecutors charging violations of Section 1519 must still establish both of the following:
- The accused knowingly directed the obstructive act to affect an issue or matter within the jurisdiction of any U.S. department or agency. Violations of the RICO laws can be alleged in civil lawsuit cases or for criminal charges. In these instances charges can be brought against individuals or corporations in retaliation for said individuals or corporations working with law enforcement. Further, charges can also be brought against individuals or corporations who have sued or filed criminal charges against a defendant.
- The insurer is probably more exposed to an extra-contractual claim if it is has not obtained the opinion of legal counsel. See, e.g., Country Club of Johnston County, Inc. v. United States Fid. & Guar. Co., 150 N.C. App. 231, 246-247 (2002) (affirming treble 64 damages under Chapter 75 where, inter alia, "USF&G solicited an opinion letter from counsel only after having made its decision regarding coverage")

stice.

### Issue number 4. Jury Bias
Gross misconduct in the court that would unfairly bias a jury one way or another by State Farm was obvious.

1.) Failure to disclose knowledge of the second Carolina Beach fire under article 26, by failure to call their SBI agent witness Kevin Olliver who

14

investigated both fires, who would have exposed their prior knowledge of the same.

2.) Failure to disclose knowledge of the second Carolina Beach fire under article 26, by failure to call their Investigator employee Kent Dowdy who investigated both fires with Kevin Olliver's assistance, who would have exposed their prior knowledge of the same.

3.) Deliberate Omission of a contradictory email that exposed a lie in a theme that was initiated in an opening statement and pursued for several days in an attempt to portray Mr. Yates as a man engaged in email fraud. This email also was obligated to have been produced under rule 26 AND FEDERAL CODE 11, given the narrative Carter Elkins for State Farm delivered in his opening statement, and the line of questioning pursued by Jonathan Hall for State Farm, for the Yates family and Zoe Zacchino.

4.) Deliberate attempt to portray the Carolina Beach Road fire as an attempt to prevent the IRS from evaluating the value of the property when in fact, the they had the court case that plainly showed the valuation issues were on the sold side and not the buy side of the real estate transaction in an attempt to portray Mr. Yates as a criminal tax evader, and a serial arsonists, document forger, In North Carolina statement that does any of the following things amounts to libel per se:

- charges that a person has committed an infamous crime; YES
- charges a person with having an infectious disease;NO
- tends to impeach a person in that person's trade or profession; YES, as real estate professionals or investors
- otherwise tends to subject one to ridicule, contempt, or disgrace. YES.
- While this was in federal court it did transpire in North Carolina and local standards are relevant to the community in which it occurred. YES.

5.) Use of a proven liar to try to implicate Mr. Yates as with an arsonist as opposed to someone who may have happened to be in a Walmart at the same time. Use of a known liar who could not identify Mr, Yates in a courtroom but could in a passing truck, or was it an SUV?

Humbly Requested,

Jess G Yates, III, pro se

**CERTIFICATE OF SERVICE**
I served the party responsible
STATE FARM CASUALTY AND FIRE, Michael L. Tipsord, CEO
Corporate Headquarters
1 STATE FARM PLAZA, BLOOMINGTON ILLINOIS 61710